LOTTINGER, Judge.
This matter arises out of a suit brought by Radcliff Materials, Inc., hereinafter referred to as Radcliff, against E. G. Roe, hereinafter referred to as Roe; Charles Carter & Company, Inc., hereinafter referred to as Carter; Louisiana State Bond and Building Commission, hereinafter referred to as State; American Employers Insurance Company, hereinafter referred to as American; and Aetna Casualty & Surety Company, hereinafter referred to as Aetna, for the payment of $6,143.51 for shells which Radcliff furnished in the construction of the Young-Memorial Vocational-Technical School in Morgan City, Louisiana.
On April 14, 1964, State entered into a contract with Carter for the building of this school. American issued a performance bond in favor of Carter. Carter subsequently entered into a subcontract with Roe on May 18, 1964, for the performance of certain work in the project. In connection with this subcontract, Radcliff furnished shells to Roe at an invoice price of $6,143.51, and later filed a lien against the project in the said amount, whereupon Carter obtained a bond of said lien from Aetna.
Following the filing of this suit, an exception of no cause or right of action was filed by State, which exception was sustained by the Trial Court. Answer was filed by Roe in the form of a general denial. Carter, American and Aetna also answered by way of general denial, but coupled therewith a third party demand against Roe urging, in the alternative, that if said third party plaintiffs were held liable to Radcliff, they were entitled to judgment over and against Roe in a like amount. In addition, Carter sought judgment against Roe in amounts representing alleged expenditures for the preparation and filing of a bond to release the lien, repair of a cable damaged by Roe, a refund representing an overpayment to Roe and a claim for attorney fees. Roe an *790 swered the third party demand in the form of a general denial, and reconvened against third party plaintiffs for the sum of $6,-284.00, which Roe claims Carter underpaid it for work performed under the sub-contract. This reconventional demand was denied by third party plaintiffs and defendants in reconvention.
The Trial Court awarded judgment in favor of Radcliff and against Roe, Carter, American and Aetna, in solido, in the sum of $6,143.51, with interest, and rendered judgment in favor of Carter, American and Aetna, in solido, and against Roe in the same amount. The Trial Court further awarded judgment in favor of Carter and against Roe in an amount representing the expenses connected with obtaining a bond to release the lien and for attorney fees. On the reconventional demand, the Trial Court awarded judgment in favor of Roe and against Carter in the sum of $5,821.51, with interest. All other claims were rejected. Carter, American and Aetna have taken appeals insofar as judgment was rendered in favor of Roe and against Carter.
The pertinent portions of the subcontract between Carter, as contractor, and Roe, as subcontractor, are Paragraphs 1, 5(a) and 15 which provide as follows:
“1. Subcontractor shall furnish and pay for all labor, services and materials and perform all of the work necessary or incidentally required for the completion of that part of the work covered by the Contract Documents, as follows:
Approx. 6300 SY Asphalt Paving at $3.00 SY
“ 2660 CY Compacted Shell at $3.25 CY
Unit prices govern contract — payment will be made according to the above units based on Job Requirements.
5.(a) Subcontractor shall make all alterations, furnish materials for and perform all extra work or omit any work Contractor may require without nullifying this agreement, at a reasonable addition to/or deduction from the contract price hereinafter set forth and pro rata to the same. * * * ”
“15. Contractor agrees to pay Subcontractor for said work the sum of— See Face Amount of Contract — ”
The record indicates that the intent of the parties was that the building area was to receive approximately 2,660 cubic yards of compacted shell, and that Roe was to be compensated only according to the actual number of cubic yards of shell compacted at the unit price of $3.25 per cubic yard. The area outside of the building, or the parking area, was estimated at the time of the execution of the subcontract to comprise approximately 6300 square yards which was to receive asphalt paving at a unit price of $3.00 per square yard. Prior to the laying of the asphalt, however, the parking area was to be cleared, graded and compacted with shell.
It is further evident from the record that Roe was bound to recognize the right of the owner to make changes in the specifications even though this might lead to the subcontractor doing less work than originally anticipated, and, in fact, such a change was ordered by the owner. This change was the elimination of the asphalt covering over the parking area, however, the other portion of the work to the parking area was performed by Roe.
Although the contract between the parties called for the compaction of approximately 2,660 cubic yards of shell inside the building, only 1,712 cubic yards were actually compacted by Roe. This phase of the *791 work could not be completed because the walls were not up and a vacant area had to be left along the inside of the walls as work space for the bricklayers to use in building the walls.
The Lower Court held that Roe was entitled to be compensated for these 1,712 cubic yards of shell compacted inside the building at the unit rate of $3.25 per cubic yard, as specified in the contract, or the sum of $5,564.00. This holding is not disputed by Carter.
The record further disclosed that the parking area upon which Roe did work comprised 6,216% square yards, and not the 6300 square yards as mentioned in the contract. This reduction in area was caused by the omission of an area of 83% square yards, which was withdrawn from the contract. The contract provided that the compensation for the preparing of the ground, furnishing, laying and compacting .shells to a thickness of six inches, and laying asphalt on top of the shells would be at the rate of $3.00 per square yard.
Although there is some dispute on the point, the record reflects that Roe substantially complied with his part of this agreement except for the laying of the asphalt cap which was subsequently omitted from the job by the owner. The only dispute regarding the inadequacy of Roe’s work is based principally on the work and on the amount of shells that were required several months later to bring the top of the shells to the required grade. During this period of several months, however, the work had been exposed to traffic of vehicles and weather. There is no convincing evidence to dispute Roe’s testimony that the shells were ready to receive the asphalt cap at the proper grade when he completed the compaction of the shells.
Roe had made arrangements for another party to lay the asphalt cap after he had completed the remainder of the work at the rate of $1.35 per square yard. There is no dispute in the record that this was not the going price for such work. The Lower Court, therefore, held that under the terms of the contract Roe should be compensated at the unit price of $3.00 per square yard, as agreed in the contract, less that part of the work which he did not perform, i. e., the laying of the asphalt cap. The market price of this work is $1.35 per square yard, and therefore the Lower Court awarded him $1.65 per square yard for the 6,216% square yards, or the sum of $10,257.51.
The Lower Court, therefore, held that Roe had earned the sum of $5,564.00 for the work done inside of the building, plus the sum of $10,257.51 for the work done outside of the building, or the total amount of $15,821.51 under the contract. As the record reflects that Carter has paid Roe the sum of $10,000.00 on account, a judgment was rendered below for $5,821.51, same being the balance due.
Carter raises in its third party demand against Roe the fact that Roe did not use the amount of shells which he claims to have used on the job and, accordingly, claims that Roe has in fact been overpaid. The record discloses that Roe was successful in having the employee of Rad-cliff, whose duty it was to measure the shells on the barge, reduce his measurement from 2,304.60 cubic yards to 2,151.42 cubic yards. This agreement on the part of Carter, however, is without merit because Roe was not obligated to1 furnish any particular quantity of shells in the completion of the outside, or parking lot, portion of the contract. He was to be paid on a square yard basis and his only requirement was to properly grade or finish the ground and compact the shells to a depth of six inches to grade level.
In view of the above, we find that the Lower Court was correct in its holding that Roe was entitled to $3.25 per cubic yard for the 1,712 yards of shells compacted inside the building, or the sum of $5,564.00 for the inside work. The outside work consisted of the compaction of an area of 6,-216% square yards. The contract price *792 for this work was at the rate of $3.00 per square yard, however, due to a change by the owner, the laying of the asphalt cap was eliminated. The record clearly shows that the fair and equitable cost of such asphalt cap was at the rate of $1.35 per square yard. Deducting the cost of the asphalt cap from the cost as provided in the contract would leave a basis of $1.65 per square yard for the work done on the outside parking area. We feel this to be a fair and equitable basis for determining the value of the portion of the contract performed on the parking lot.
It is apparent that Roe has consented to that portion of the judgment below which allowed Carter the sum of $35.40 for obtaining and recording a bond to release Radcliff’s lien, as well as an award to Carter and against Roe of the sum of $500.00 for attorney fees. This concurrence is shown not only by the absence of any reference thereto in Roe’s brief before this Court, but by the fact that Roe has' failed to appeal or answer the appeal without which we are unable to consider these allowances.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by appellants.
Judgment affirmed.